**From:** Elizabeth Ford [mailto:egford@gmail.com]
**Sent:** Thursday, September 27, 2018 6:32 AM
**To:** Novotny, Abbi <Abbi.Novotny@firstgroup.com>; John Marton <Jmarton@akteamsters.com>
**Subject:** Re: Teamsters Local 959 and First Student Arbitration Decision

Dear Parties:

Please find the decision with my signature inserted. Please excuse the oversight.

Best,

Arbitrator Ford


> On Sep 26, 2018, at 12:29 PM, Elizabeth Ford <egford@gmail.com> wrote:
>
> Dear Parties:
>
> Attached you will find my decision and order in the above referenced matter. Thank you for you excellent presentations.
>
> Best,
>
> Arbitrator Ford
>
> <T959 & 1st Student Dec.pdf>
>
> <FIrst STudent and Temasters 959 Billing.pdf>

This email (and any attachment) is intended solely for the addressee and may contain confidential information. If you have received this email in error, please notify us immediately and delete it. Reading, disclosing, copying or disseminating any portion of this transmission without authorization is prohibited. For more information on our range of services, please visit http://www.firstgroupplc.com

IN ARBITRATION BEFORE
ELIZABETH FORD, ARBITRATOR

| | |
|---|---|
| TEAMSTERS, LOCAL 959,<br>               Union,<br><br>and<br><br>FIRST STUDENT, INC.<br>               Employer.<br><br>(FMCS #181117-01690; Kuklis Removal) | ARBITRATOR'S DECISION AND AWARD |

**Appearances**:

    <u>For the Union</u>:
    John Martin
    Business Representative
    Teamsters Union, Local 959

    <u>For the Employer</u>:
    Abby Novotny
    Labor Counsel
    First Student Transport

## INTRODUCTION

Teamsters, Local 959 ("Union" or "Teamsters") and First Student, Inc. ("Employer" or "First Student") are parties to a collective bargaining agreement governing the terms and conditions of employment for "all full-time and regular part-time school bus drivers, special service drivers, monitors, and attendants employed by the Company servicing the [Kenai Peninsula Borough School District], including locations from Portage to Seward and Seward to Homer, Alaska; excluding all office clerical

employees, mechanics, school crossing guards, dispatchers, guards, and supervisors as defined by the Act." (Jt. Ex. 2, hereafter "Local Agreement") By its terms, the Local Agreement is supplemental to the National Master Agreement between First Student and the International Brotherhood of Teamsters ("National Agreement").

This matter is before the Arbitrator as the result of a grievance initiated by the Union on behalf of John Kuklis alleging that the Employer violated the National and Local Agreements as follows:

> On Friday, March 24, 2017, the Kenai Peninsula Borough School District (KPBSD) removed Mr. Kuklis from district driving work. Since then, First Student, Inc. as not made an effort to provide work to Ms. Kuklis as described under Article 11 of the National Master First Student Agreement. Additionally, the Union grieves under any other articles/sections that may apply of the collective bargaining agreement (CBA) between First Student, Inc. – Kenai, and the Teamsters Local 959 and any other articles/section that may apply of the First student National Master Agreement.

(Jt. Ex. 3.) The remedies requested were (1) Provide work to Mr. Kuklis "as we discussed in both your office on Friday, March 24, 2017, as well as in an email sent by the Union to the Company Thursday, March 39, 2017"; (2) pay to Mr. Kuklis his "daily route guarantee" for all his missed days of work; and (3) full pay to Mr. Kuklis for "any/all non-school district work performed by other employees." (Id.) On May 2, 2017, the Company responded, denying the grievance. (Id.) On May 15, 2017, the Union moved the grievance to step 2 of the grievance process. On May 30, 2017, the parties held a meeting at step two of the grievance process and because there was no written response from the Employer, the Union moved the grievance to the next step.

On June 27, 2017, pursuant to Article 42 of the National Agreement, the Union submitted a Joint National Grievance Review Committee Docketing Request Form, seeking review of this issue prior to arbitration since it involved "issues of national or

regional significance." (Jt. Ex. 4; Jt. Ex. 1, Article 42) On November 7, 2017, the Joint National Grievance Review Committee ("JNGRC") issued its decision, finding as follows:

> [T]he dispute is hereby remanded to the parties for resolution under their local dispute resolution procedures. The parties may rely on the language of both their local agreements as well as the National Agreement.

(Jt. Ex. 5)

This matter was moved to arbitration and the hearing held before the undersigned on June 20, 2018. At hearing, the parties stipulated that all time limits had been complied with and the matter was properly before the arbitrator. All parties were provided a full opportunity to make opening statements, examine and cross examine witnesses, and introduce documents into evidence. On July 31, 2018, the parties timely submitted written briefs and the record was closed. This is the Arbitrator's decision.

## STATEMENT OF THE ISSUE

The parties were unable to agree upon statement of the issue, and therefore the parties agreed to leave the issue to the arbitrator to decide. The Union stated the issue as follows:

> Did First Student violate the National Master First Student Agreement, including the supplemental agreement between Teamsters, Local 959 and First Student, Inc. – Kenai Peninsula, when it refused/failed to offer and/or provide work to Mr. John Kuklis after the customer (Kenai Peninsula Borough School District) required that he be removed from district work on March 24, 2017?

The Employer stated the issues as follows:

Does the National Master Agreement apply to this issue?

If the National Master Agreement applies, was there a violation?

If the National Master Agreement does not apply, did the Company violate the Local Agreement?

If so, what is the appropriate remedy?

The Arbitrator will state the issues as follows:

Did First Student violate the National Agreement and/or the Local Agreement in its response to the Kenai Peninsula Borough School District's March 24 requirement that Mr. Kuklis be removed from District service? If so, what is the appropriate remedy?

## RELEVANT CONTRACT PROVISIONS

**NATIONAL AGREEMENT**

**Article 2, Section 1.**

It is the intent of the parties that generally negotiated terms and conditions of employment will be set forth in the National Agreement and that locally negotiated conditions generally will be narrowly limited in scope to locally negotiated economic provisions and local terms and conditions of employment.

\*\*\*

Upon the effective date of this Agreement, any previously adopted local agreement, practice or provision which provides less than the wages, hours, and working conditions established by this Agreement and the supplements and/or riders hereto shall become null and void. Furthermore, any lesser conditions contained in any Supplement, Rider or Addendum hereto shall be superseded by the conditions contained in this National Agreement. However, nothing in this National Agreement shall deprive any employee of any superior benefit or terms contained in their Supplement, Rider or Addendum.

**Article 11. Discipline and Discharge.**

**CUSTOMER REMOVAL.**
If the Company is required to remove a driver from a route at the School District's request, the Company agrees to discuss the matter with the School District as soon a practical to attempt to adjust or resolve the issue and will seek permission of the client to invite the Union to participate in such discussion. If the School District maintains its position on the removal of the driver, the Company will meet with the Union to discuss the status of the driver. The Union will be given a copy of the directive requiring the removal of the driver where appropriate. If the directive is not in writing, the Company will request the School District provide a written directive setting for the reasons for the removal. The

Company will make every effort to place the employee in substantially equivalent work within the bargaining unit serviced by this Local Union or at another of the Company's locations for which the driver is qualified, either of which should be in the geographic area of the Local Union or in another mutually agreeable location. If the School District does not provide a directive requiring removal of an employee in writing, First Student will, in writing, provide the Union and the employee with a description of the directive. The Company shall not initiate or instigate employee removal or customer complaints with the District. The Company shall provide training to the employee in any area of deficiency articulated by the School District in order to assist the employee in correcting any actual or perceived performance problems.

**LOCAL AGREEMENT.**

**Preamble.**

This Agreement is supplemental to the Teamsters – First Student National Master Agreement. In accordance with Article 2, Section 4 of the National Master Agreement, the operations covered by this supplement are part of the single national bargaining unit covered by the National Master Agreement. Additionally, in accordance with Article 2, Section 2.01 of the National Master Agreement, any lesser conditions contained in this supplement shall be superseded by the conditions contained in this National Master Agreement. However, nothing in the National Master Agreement shall deprive any employee of any superior benefit or term contained in this supplement.

**Article 14 – Discipline, Grievance, and Arbitration**

The Company has the right to discipline or discharge an employee for just cause. All discipline shall follow the terms and condition of this Agreement.

\* \* \*

**b.** In cases of serious employment infractions as defined in this Agreement, the employee may be disciplined or discharged without the Company resorting to the progressive discipline process, upon completion of an investigation that warrants such action. Serious employment infractions shall include the following;

1. Receipt by the Company from the KPBSD of a notice to remove an employee from performing service in accordance with the District's revenue contract. Such notice will be sent to the Union immediately. Those employees that are removed by the SPBSD may be utilized for other work outside of the revenue agreement or any work under the revenue contact to the extent allowed by the District's restrictions, if there is work available and the employee is qualified for such work.

## FACTUAL BACKGROUND

First Student, Inc., provides transportation services to governments, including school districts, throughout the United States. At the times relevant to this arbitration, First Student provided school bus services to the Kenai Peninsula Borough School District ("KPBSD") pursuant to a "revenue contract." (Fielding Dir.) This contract provides that the school district may request a driver be removed from service.[1] The Location Manager for the Kenai Peninsula, during the relevant period, was Larry Fielding. (Id.)

Since October 2008, John Kuklis had been an employee of First Student and a part of the bargaining unit covered by the National and Local Agreements. (Kuklis Dir.) On March 24, the KPBSD sent an email to Mr. Fielding saying:

> Per the rights reserved to the District under the contract, and on behalf of the District, I am requiring First Student to remove John Kuklis (Homer driver, Rt. 57) immediately from all positions that would bring him into contact with any child engaged in an activity sponsored by KPBSD.
>
> This is a direct result of the Gross Breach of Confidentiality committed by Mr. Kuklis on 23 March 2017 when he entered into a conversation about a student who does not ride his bus, attends a school Mr. Kuklis does not serve, regarding an incident that happened roughly 4 months ago with an individual who is not the parent or legal guardian of the child in question.

(Jt. Ex. 6.) No further evidence was presented by either party about the nature of this incident. Mr. Fielding asked the school district representative if anything could be done and was told that there was nothing. (Fielding Dir.) Mr. Kuklis was informed about his removal in a meeting with his direct supervisor, Ryon Turley. Mr. Turley asked Mr.

---

[1] The revenue contract was not introduced into evidence, but there was no dispute as to this existence of this provision.

Kuklis to turn in his First Student ID, but Mr. Kuklis remained on the First Student employee roster. (Kuklis Dir.; Fielding Dir.)

Mr. Kuklis was not offered any work after March 24. Mr. Kuklis sent Mr. Fielding emails on March 28, April 4 and April 17, each saying the same thing: "Just checkin' in." (Un. Ex. 5) There is no evidence in the record that Mr. Fielding responded to these – admittedly cryptic – emails. Mr. Kuklis attended, and was paid for, a safety meeting in April, but he was offered no other work by First Transit. (Kuklis Dir.; Fielding Cross)

At hearing, Mr. Fielding testified that "there really wasn't anything at that [Kenai] location." (Fielding Dir.) While there might be bus cleaning work at other times of the year, the cold temperatures precluded bus cleaning activities during the relevant period. (Id.) There was a cruise ship charter service, but the charter had asked that Mr. Kuklis not be assigned. (Id.) There was evidence of periodic cleaning and other non-student work, such as administrative tasks and other non-bargaining unit work. (Petrovich Dir.) In addition, Mike Petrovich, Union Business Representative assigned to the Kenai location, testified that there were worksite postings seeking volunteer drivers to go to Seattle or Steilacom, Washington. (Id.)

On May 8, 2017, Mr. Kuklis was terminated from employment with First Student. (Fielding Dir.) On June 30, 2017, KPBSD changed its transportation contractor from First Student to Apple School Bus, resulting in First Student's closure of its Kenai location. (Id.)

# CONTENTIONS OF THE PARTIES

**UNION'S ARGUMENTS**.

The Union contends that the terms of the National Agreement govern the disposition of this matter. The Union points to Article 2, Section 1 of the National Agreement as well as the Preamble to the Local Agreement to support its argument that the Local Agreement is supplemental to the National Agreement. The Union points out that the grievance was properly processed under the National Agreement and that the arbitrator has the authority to interpret the National Agreement because the Joint National Grievance Committee deferred the matter to local resolution.

Next, the Union argues that the National Agreement has been violated by the Employer's failure to place Mr. Kuklis in a comparable position when such work was in fact available, both within the Local's jurisdiction and outside Alaska. First, the Union contends that there was comparable work available that the Grievant was qualified to perform within Alaska, pointing to openings in Fairbanks and Wasila.[2] Second, The Union contends that there was work available in the lower 48, specifically Seattle and Steilacom.

At the Arbitrator's request, both parties offered their views as to whether the KPBSD's customer removal request should be considered discipline. The Union argues that it is not discipline under the contract because (1) it lacked the normal indicia of discipline and (2) Jeremy Holan, the Union Business Representative responsible for

---

[2] Though the Union presented evidence as to "fill in" work available in Homer, it did not argue it its brief that the failure to assign Mr. Kuklis to such activities as bus washing or maintenance work amounted to a violation of either agreement.

negotiating this provision testified that the such removals are not considered by either party to be discipline under the contract.

**EMPLOYER'S ARGUMENTS**.

The Employer first argues that its conduct did not violate the terms of the Local Agreement. The Local Agreement's removal language, the employer argues, is permissive and not mandatory, allowing but not requiring that the removed employee "may be utilized for work outside the revenue agreement…" Thus, the Employer argues that it did not have an obligation to find work for Mr. Kuklis. In the alternative, the Employer argues that there were no jobs available to Mr. Kuklis because the yearly bid had just taken place and any other available work would need to have been assigned to casual employees by seniority. The Employer argues that the work activities that the Union pointed to were not activities that Mr. Kuklis would have been entitled, by virtue of his seniority, to obtain.

The Employer next argues that the National Agreement does not apply to this case and the Arbitrator lacks the authority to interpret it. The Employer acknowledges that the matter was remanded by the National Joint Grievance Review Committee back to the parties for decision but contends that "[t]he Company never agreed that the National Agreement language applies to this case." Employer's Brief at 10. The Employer argues that the Arbitrator lacks authority to interpret the National Agreement because consent of the Company is required under the language of that agreement.

Nonetheless, the Employer argues that the National Agreement does not confer a greater benefit than the local agreement; it is merely a reinforcement of the permissive language in the Local Agreement. The Employer goes on to argue that the National

Agreement language does not require the Employer to engage in "every effort" to place the employee unless there substantially equivalent work. The Employer contends that the Union failed to offer proof of the existence of substantially equivalent work. In addition, the Employer contends, the Employer only has the obligation to make "every effort" if there exists a mutually agreeable location outside the geographic area of the Local Union. The Employer argues that no such location existed that it would agree to.

Next, the Employer argues that the language of Article 11 is stated in the disjunctive and therefore the Employer only needed to make every effort to place the employee with the bargaining unit or at another location within the geographic area of the Local Union or in another mutually agreeable location. The employer need not, in the Employer's view, make every effort to find placement in all of these options; one will suffice.

Finally, the Employer points to the requirement that the employee be qualified for the position. The Employer argues that because Mr. Kuklis "allegedly violated the confidentiality between a minor and an individual that was not the minor's guardian or parent" he was not qualified to transport children. The Employer points to the fact that the Union did not present evidence challenging the basis for Mr. Kuklis's removal as evidence that the Union conceded this point. The Employer goes on to argue that it need not further discipline a removed employee to establish that the employee would no longer be qualified to transport children at a different location.

## DECISION

### National vs. Local Agreement.

The first question that needs to be resolved is which contract applies. I find the answer is both: the Local Agreement is supplemental to the National Agreement and explicitly defers to the National Agreement in this case since the National Agreement contains benefits superior to the Local Agreement.

First Student and the International Brotherhood of Teamsters entered into an agreement covering all of employees represented by local unions who are signatories to the agreement. Those unions include Teamsters, Local 959. *See* Jt. Ex. 1, Appx. A. There, the parties agree "generally negotiated terms and conditions of employment will be set for in the National Agreement and … Locally negotiated conditions generally will be narrowly limited in scope.." *Id*. at Article 2, § 1. The National Agreement explicitly nullifies any pre-existing terms that provide terms and conditions of employment. *Id*. As it must, the Local Agreement echoes these provisions.

> This Agreement is supplemental to the Teamsters – First Student National Master Agreement. In accordance with Article 2, Section 4 of the National Master Agreement, the operations covered by this supplement are part of the single national bargaining unit covered by the National Master Agreement.

In addition, the Local Agreement provides that "any lesser conditions contained in this supplement shall be superseded by the conditions contained in this National Master Agreement." Jt. Ex. 2, Preamble.

Some question has been raised as this arbitrator's authority to interpret the National Agreement, if I find that contract applies. The Employer argues that its consent would be required to allow this arbitrator to interpret the National Agreement. This

arbitrator disagrees. The simplest means of disposing of this argument is to note that the Employer's statement of the issue presumes that the Arbitrator will interpret the National Agreement, thus providing any necessary consent.

However, it may be helpful to the parties to clarify further. The National Agreement creates a Joint National Grievance Review Committee "to consider and resolve disputes involving issues of national or regional significance …" The sections goes on to presume ultimate resolution by a national *or* local arbitrator.

> The purpose of the committee is to review such disputes prior to the submission of the matter to the final authority for resolution (whether an arbitrator or a panel) set for in the local agreement out of which the dispute arises or this National Agreement.

Jt. Ex. 1, Art. 41. The article empowers the JNGRC with the same power as a neutral arbitrator to issue final, binding decisions. *Id*., at §4.

Here, the Union submitted this dispute to the JNGRC for decision on June 27, 2017. The JNGRC issued its decision on November 7, 2017, remanding the decision to a local arbitrator and explicitly authorizing that decision-maker to rely on the National or Local Agreement.

> The JNGRC has determined that the dispute is hereby remanded to the parties for resolution under their local dispute resolution procedures. The parties may rely on the language of both their local agreement as well as the National Agreement.

Jt. Ex. 5. The Arbitrator has authority to interpret either agreement, or both.

**Driver Removal and "Every Effort".**

Having determined that the language of the National Agreement controls this matter, the next question is whether it was violated. The relevant language provides the following when the Employer is required to remove a driver at the District's request:

> The Company will make every effort to place the employee in substantially equivalent work within the bargaining unit serviced by this Local Union or at another of the company's locations for which the driver is qualified either of which should be in the geographic area of the Local Union or in another mutually agreeable location.

Jt. Ex. 1, Art. 11. The Employer is correct that it does not need to guarantee the driver work. However, the Employer must make an effort; indeed, it must make "every" effort. This means that the Employer must explore all options; it may not simply assert that there are no jobs. There is no requirement that the employee, the Union or any other person demonstrate that substantially equivalent work exists before the Employer exert effort to locate the work. It is the employer's obligation to make the effort.

The geographic extent of the Employer's obligation to explore is set out in the section. The employer must look at the particular area covered by the Local Agreement: the Kenai Peninsula. But, the Employer must also look to "another of the company's locations . . . in the geographic area of the Local." In this case, Local 959 services all of Alaska. Finally, the scope could include another "mutually agreeable location." Thus, the position offered could be outside of Alaska. The "mutual agreement" language here should not be read to limit the Employer's obligation to locate such positions. Once located, the question is whether the parties mutually agree.[3]

In this case, the Union presented evidence that the Employer did not explore any options outside of the Kenai Peninsula. Indeed, it appears that the Employer looked only to work available in Homer. This arbitrator agrees that there were no positions available there. It is not reasonable for the Employer to assign, out of seniority order, Mr. Kuklis to

---

[3] Though it is not raised at this point this the proceedings, a reasonable reading of the mutual agreement language would be to ensure that the Employer does not discharge its obligation by offering the removed employee a placement in a distant location unless the employee agrees. The negotiating history would be instructive on this point.

perform intermittent bus cleaning or maintenance or office work, especially given the fact that those roles are mostly excluded from bargaining unit coverage.

However, the Union did present evidence that, had the Employer explored, it would have discovered available driver positions in Fairbanks and Wasila. I do not find one way or another that Mr. Kuklis would have been qualified for those positions or that he could have bumped a more senior employee bidding on those positions. What I do find is that the Employer did not make every effort to locate those openings and explore whether Mr. Kuklis would have been able to assume any one. Likewise, there was some (albeit limited) evidence offered at hearing that there were positions available in Seattle or Steilacom, Washington. I find that the Employer did not adequately explore those positions either.

The Employer argues that, because of Mr. Kuklis's removal from service by KPBSD, he is unqualified for any other driving position. This confuses the removal provisions of the contract with the discipline process. Both parties concede that this is not a discipline case. Indeed, if it were, the Employer would bear the burden of proof and would have had an obligation to conduct an investigation before disciplining Mr. Kuklis. For the employer to the assert that Mr. Kuklis is by virtue of his removal, is unable to be placed in any position transforms the "removal" process into a discharge, without any of the normal protections of just cause. This reading of the collective bargaining agreement would render the discipline and discharge provisions a nullity. I find that the "qualification" requirement means that, to be placed in the position, the employee must be able to do the job. In this case, Mr. Kuklis is qualified for another driving job.

## CONCLUSION AND ORDER

For the above reasons, I find that the Employer violated the collective bargaining agreement by failing to make every effort to locate and place the grievant in substantially equivalent work. As remedy, I do not order the remedy requested by the Union. Instead, I order the Employer parties to examine all of the positions in Alaska and the lower 48 available during the period between Mr. Kuklis's removal and his discharge. If Mr. Kuklis would have been qualified for any one - that is, if anyone was a driver position - then, the Employer is ordered to pay the wages that Mr. Kuklis would have earned in that position between his removal and his discharge. The Employer is ordered to share the results its examination and conclusion with the Union within 30 days. I will retain jurisdiction for a period of 90 days to resolve any disputes that arise in the calculation of damages.

DATED this 26th day of September, 2018.

_____
Elizabeth Ford
Arbitrator